UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| **GERALDINE A. TRICE**, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 17-cv-1564 (TSC) |
| **FEDERAL DEPOSIT INSURANCE CORPORATION**, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION [1]

After at least five unsuccessful challenges to the foreclosure sale of her property in Nevada, *pro se* Plaintiff Geraldine Trice brings this action against the Federal Deposit Insurance Corporation ("FDIC"), which denied her administrative claim involving the servicing of her mortgage loan account. The FDIC seeks dismissal of this lawsuit pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted. ECF No. 7. For the reasons set forth below, the court will grant the FDIC's motion to dismiss.

---

[1] On March 31, 2019, this court issued an Order **GRANTING** the FDIC's motion to dismiss. *See* ECF No. 13. This Memorandum Opinion explains the court's reasons for that Order.

1

# I. BACKGROUND

In 1999, Trice executed a mortgage note and trust deed in favor of Washington Mutual Bank ("WaMu"). Compl. ¶ 48; Compl. Ex. 1-1 at ECF p. 64.[2] Rather than requiring Trice to make payments that included escrow amounts for taxes and insurance, WaMu allowed her to pay her insurance and taxes directly. ECF No. 11 Pls. Response at p. 2; Compl. Ex. 1-1 at ECF p. 83. WaMu closed in September 2008 and the FDIC was appointed as its receiver. Compl. ¶ 51; *see Alkasabi v. Wash. Mut. Bank, F.A.*, 31 F. Supp. 3d 101, 104 (D.D.C. 2014). JPMorgan Chase Bank, N.A. ("Chase") later acquired WaMu's assets, along with the right to service the loans in WaMu's portfolio. Compl. Ex. 1-1 at ECF p. 122.

On September 30, 2009, approximately one year after WaMu closed, Trice received a letter from Chase notifying her that it would formally begin servicing her loan. *See* Compl. Ex. 1-1 at ECF p. 80. Sometime later, Chase notified Trice that—consistent with the terms of her mortgage agreement—going forward, her payments would include escrow amounts because Chase had paid a delinquent tax bill on her behalf. *Id.* at ECF p. 83. Accordingly, Chase demanded that Trice remit future mortgage payments that included the escrow amounts and warned her that the bank would not consider her account in good standing if she submitted partial payments. *Id.* Despite receiving this notification, Trice admits that she did not send payments that included the escrow amount, and instead kept paying both the insurance and taxes directly. Compl. ¶ 7; Pls. Resp. at p. 3.

---

[2] Trice attached multiple exhibits to her Complaint that are not identified sequentially, and that contain pages which are also not numbered sequentially. Accordingly, for ease of reference, the court will cite to the relevant ECF page numbers when referring to exhibits attached to the Complaint. Those exhibits can be found at ECF No. 1-1 and ECF No. 1-2.

Ultimately, Trice's property was sold at a non-judicial foreclosure sale. *See Trice v. Nat'l Default Servicing Corp.*, No. 2:16-CV-2101-GMN-GWF, 2017 WL 3925413 (D. Nev. Sept. 6, 2017). Trice unsuccessfully sued Chase twice in Nevada state court over the foreclosure, but the Nevada Supreme Court affirmed the lower court decisions in both cases.[3] *See Trice v. J.P. Morgan Chase Bank*, No. 63052, 2013 WL 5432353 (Nev. Sept. 20, 2013); *Trice v. J.P. Morgan Chase Bank*, No. 66586, 2015 WL 1858865 (Nev. Apr. 17, 2015). Trice also unsuccessfully sued Chase, along with other defendants, in three Nevada federal actions, one of which was affirmed on appeal. *Trice v. J.P. Morgan Chase Bank*, No. 2:15-cv-01614-APG-NJK, 2015 WL 10743195 (D. Nev. Nov. 18, 2015), *aff'd sub nom*. *Trice v. J.P. Morgan Chase Bank, N.A.*, 672 F. App'x 679 (9th Cir. 2016); *Trice v. Damion*, No. 2:16-cv-01348-MMD-NJK, 2017 WL 187149(D. Nev. Jan. 17, 2017); *Trice v. Nat'l Default Servicing Corp.*, No. 2:16-cv-02101-GMN-GWF, 2017 WL 3925413 (D. Nev. Sept. 6, 2017).

In June 2016, the FDIC sent Trice a letter indicating that she might have a claim against WaMu, and providing instructions for filing a claim. Compl. Ex. 1-1 at ECF p. 2. Trice submitted a claim on August 16, 2016,[4] in which she challenged the foreclosure and alleged, *inter alia*, that Chase had unlawfully required her to include the escrow amounts in her mortgage payment. *Id.* at ECF pp. 5-21; *see* Compl. ¶ 101 ("Plaintiff filed a claim with the [FDIC] seeking validation of Chase's successor in interest claim, but also to resolve the dispute that arose from

---

[3] Trice sued other defendants in one of the actions, but did not name the FDIC. *See* 2015 WL 1858865.

[4] It is unclear if Trice filed the claim on July 17 or August 16 because her proof of claim form contains two different dates in different sections of the form. *See* Compl. Ex. 1-1 at ECF pp. 5–6. Viewing the facts in the light most favorable to Trice, the court will assume the August 16 date is correct, although this assumption does not change the outcome of this litigation.

Chase's unilateral decision to modify the pre receivership agreement between the Plaintiff and [WaMu] that enabled her to make direct payments of her property taxes and insurance.").

On August 31, 2016, the FDIC sent Trice a letter disallowing the claim because it "ha[d] not been proven to the satisfaction of the Receiver. 12 U.S.C. § 1821(d)(5)(D)." Compl. ECF No. 1-1 at ECF pp. 57–58. The letter informed Trice that if she disagreed with the agency's decision, she had sixty days from the date of the letter to file a lawsuit in federal court, and that if Trice did not file a timely lawsuit, the claim disallowance would become final and she would "have no further rights or remedies with respect to [the] claim." *Id.* p. 57 (citing 12 U.S.C. § 1821(d)(6)(B)(ii)). The letter also informed Trice that she was required to file any lawsuit challenging the disallowance in the district where the failed institution's principal place of business was located or in the District of Columbia. *Id.*

Although Trice admits that WaMu's principal place of business was in the Western District of Washington, she did not seek timely judicial review of the FDIC's decision in that district or in the District of Columbia. ECF No. 3, Pls. Resp. to Show Cause Order at p. 3. Instead, within the prescribed sixty-day window, Trice sued Chase in one of the Nevada federal lawsuits discussed above, without naming the FDIC as a defendant. *See Trice*, 2017 WL 3925413. Sometime later, also within the sixty-day window, she moved to add the FDIC as a defendant, raising the same issues she raises in this suit. *See id.* at ECF No. 12; Compl. Ex. 1-1 at ECF pp. 41–53.

Almost one year after the FDIC disallowed her claim, on August 2, 2017, Trice filed suit in this court, seeking, *inter alia*, compensatory damages from the FDIC and a judicial declaration that her loan was "void as a result of Chase's" alleged misconduct. Compl. p. 37. Approximately one month later, the Nevada federal court denied Trice's motion to add the FDIC

to her lawsuit against Chase and granted Chase's motion for summary judgment. *Trice*, 2017 WL 3925413.

After the FDIC filed its motion to dismiss in this case, this court issued an Order warning Trice that if she failed to address any of the FDIC's arguments in her response, the arguments might be treated as conceded. ECF No. 8.

## II. LEGAL STANDARD

When evaluating a motion to dismiss under Rule 12(b)(1), the court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted). However, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the court accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (citation omitted). Additionally, the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

The law presumes that "a cause lies outside [the court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

To withstand a Rule 12(b)(6) challenge, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In other words, the complaint must contain "a short and plain statement of the claim" and "the grounds for the court's jurisdiction" so that a defendant has fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). "In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corp. Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014).

### III. ANALYSIS

Trice alleges that the FDIC violated the Financial Institutions Reform, Recovery, and Enforcement Act's ("FIRREA") provisions requiring notice explaining the reasons for disallowing FDIC claims: 12 U.S.C. §§ 1821(d)(5)(A)(iv),[5] 1821(d)(5)(D),[6] 28 C.F.R. § 14.9.[7]

---

[5] "Contents of notice of disallowance. If any claim filed under clause (i) is disallowed, the notice to the claimant shall contain-- (I) a statement of each reason for the disallowance; and (II) the procedures available for obtaining agency review of the determination to disallow the claim or judicial determination of the claim." 12 U.S.C. § 1821(d)(5)(A)(iv).

[6] "Authority to disallow claims . . . The receiver may disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver." 12 U.S.C. § 1821(d)(5)(D).

[7] "Final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail. The notification of final denial may include a statement of the reasons for the denial and shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notification." 28 C.F.R. § 14.9(a).

Similarly, Trice alleges that the FDIC violated the Real Estate Settlement Procedures Act ("RESPA") by failing to give her notice when her loan was transferred to a new servicer. *See* Compl. ¶¶ 25, 36, 40, 46 (citing 12 U.S.C. § 2605(c)(2)(B)(iii)).[8] She also claims the FDIC violated 42 U.S.C. § 1986 by failing to prevent a conspiracy involving Chase, Compl. ¶¶ 94–103, and claims the FDIC engaged in fraudulent misrepresentation/concealment, *id.* ¶¶ 60–65, ¶¶ 80–93, as well as deceptive trade practices, *id.* ¶¶ 66–79. Finally, in her reply brief, Trice attempts to add claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*[9]

---

[8] Trice cites to 12 U.S.C. § 2605(2)(B)(iii), Compl. ¶ 36, but there is no subdivision 2 in Section 2605; that section is alphabetically divided. Accordingly, the court will analyze her claim under subdivision (b)(2)(B)(iii), which relates to providing borrowers with notice regarding changes to the loan servicer. 12 U.S.C. § 2605(b)(2)(B)(iii).

[9] Trice also references other federal statutory provisions in her Complaint, but they do not warrant analysis:

- 12 U.S.C. § 1818 (relating to the FDIC's ability to terminate a financial institution's insured status). Compl. ¶ 75;

- 12 U.S.C. § 1819 (relating to the FDIC's "corporate powers"). Compl. ¶ 46;

- 12 U.S.C. § 1821(d)(3)(A) ("The Corporation may, as receiver, determine claims in accordance with the requirements of this subsection and regulations prescribed under paragraph (4)"). Compl. ¶ 38;

- 12 U.S.C. § 1821(d)(4) (relating to the FDIC's rulemaking authority). Compl. ¶ 38;

- 12 U.S.C. § 1821(d)(13)(D) ("Except as otherwise provided in this subsection, no court shall have jurisdiction over-- (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver." Compl. ¶ 1; and

- 18 U.S.C. § 912 (criminal statute making it unlawful to falsely claim to be an employee or officer of the United States government and demand money or value under such authority). Compl ¶ 75.

## A. FIRREA

FIRREA was enacted "to enable the FDIC to expeditiously wind up the affairs of literally hundreds of failed financial institutions throughout the country." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1141 (D.C. Cir. 2011) (citations and alterations omitted). Consistent with this mission, after a financial institution is declared insolvent, the FDIC must publish notice of the institution's liquidation and mail notice to entities or persons who may have claims against the institution. *Office & Prof'l Emps. Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 65 (D.C. Cir. 1992) (citation omitted); *Brady Dev. Co. v. Resolution Tr. Corp.*, 14 F.3d 998, 1002–03 (4th Cir. 1994) (cited with approval in *Muhammad v. FDIC*, 448 F. App'x 74, 75 (D.C. Cir. 2012)). The processing schedule for such claims is as follows:

> Congress established an administrative scheme for processing the claims received after publication and mailing of notices. 12 U.S.C. §§ 1821(d)(5)–(14). After a claimant submits a claim to the [FDIC] . . . . , the [FDIC] has 180 days in which to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(i). The claim is essentially tolled during this 180 day administrative review. If the [FDIC] disallows the claim or the 180 day period expires without [FDIC] action, then the claimant has sixty days to seek further administrative determination or judicial relief. 12 U.S.C. § 1821(d)(6)(A). If the claimant fails to file suit or seek administrative review within sixty days of the denial or non-action, then the claim is deemed permanently disallowed. 12 U.S.C. § 1821(d)(6)(B).

*Brady*, 14 F.3d at 1003. "Congress instructed district courts to 'determine' claims against failed banks *de novo,* rather than merely to review, for error or abuse FDIC's . . . decision[]." *Office & Prof'l Emps. Int'l Union, Local 2*, 962 F.2d at 65 (citation omitted).

The FDIC seeks dismissal of this action because Trice did not file this lawsuit within the sixty-day limitations window, but instead filed it more than a year after the agency disallowed her claim. Trice does not dispute that she missed the sixty-day deadline, but she argues that the

8

limitations period should be equitably tolled because she sought to add the FDIC to the Nevada federal court lawsuit within the prescribed sixty-day window. Compl. ¶ 2.[10]

Putting aside the issue of whether the sixty-day limitations period is jurisdictional and therefore not subject to equitable waiver,[11] the court finds Trice has failed to satisfy the standard for equitable tolling.

> The Supreme Court has suggested . . . that courts may properly allow tolling where "a claimant has received inadequate notice, where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, where the court has led the plaintiff to believe that she had done everything required of her, or where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction."

*Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988) (citing *Baldwin Cty. Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984)) (alterations omitted). The "core" purpose of the equitable tolling doctrine is "to prevent a plaintiff from being disadvantaged by the expiration of the limitations period when it ran through no fault of his or her own." *Dove v. Washington Metro. Area Transit Auth.*, 402 F. Supp. 2d 91, 98 (D.D.C. 2005), *aff'd*, No. 05-7118, 2006 WL 7136123 (D.C. Cir. Mar. 13, 2006) (citing *Holmberg v. Armbrecht,* 327 U.S. 392, 397 (1946)) (additional citations omitted).

---

[10]  Even though Trice mentioned equitable tolling in her Complaint, she did not base any of the arguments in her brief on that theory. *See* Compl. ¶ 2. However, because it has an obligation to read *pro se* pleadings liberally, this court will address that theory.
  Trice did raise an equitable estoppel argument in her reply brief; she asserted that Chase's positions in this litigation are inconsistent with the positions it has taken in prior litigation. *See* Pls. Resp. pp. 9–10. This argument is irrelevant because Chase is not a party to this action.

[11]  While the language the Circuit uses to describe the sixty-day window in *Muhammad v. FDIC*, 448 F. App'x 74, 74–75 (D.C. Cir. 2012), suggests the limitations period is jurisdictional, the court need not decide this issue.

Here, the failure to file within the deadline was entirely Trice's fault. The FDIC notified her that she was required to file any lawsuit challenging the disallowance within sixty days of the date of the letter, and she was required to file in this district or the district court where WaMu's principal place of business was located. Compl. Ex. 1-1 at ECF p. 57. While she did try to bring her claims against the FDIC in Nevada within the limitations period, that did not satisfy her obligation to file her lawsuit in one of the two districts mandated by the statute. Her desire to bring the FDIC into her Nevada litigation is understandable, but she could have pursued that goal while simultaneously fulfilling her statutory obligation to file her claims in the appropriate district. Had Trice filed in one of the proper districts, she could have immediately sought a stay pending resolution of her motion to add the FDIC in Nevada.

Trice's decision to take a different course of action is fatal to her claim because she has not provided any legal justification for doing so. The FDIC gave her adequate notice regarding her filing obligations, and there is no evidence of misconduct on its part which might have "lulled [her] into inaction." *Mondy*, 845 F.2d at 1057. Likewise, there is no evidence that she was misled into believing she had done everything required of her. *Id.* Accordingly, Trice has not established that the limitations period "ran through no fault of [] her own." *Dove*, 402 F. Supp. 2d at 98 (citing *Holmberg,* 327 U.S. at 397). Instead, she failed to "act[] diligently to preserve h[er] claim." *See Williams v. Court Servs. and Offender Supervision Agency for D.C.*, 840 F. Supp. 2d 192, 196 (D.D.C. 2012). Accordingly, the court rejects Trice's argument that the sixty-day deadline should be tolled in this action.

Even if Trice had filed her lawsuit in the correct district within the limitations period, she has not established that the FDIC failed to meet its obligations under FIRREA. Trice complains that the FDIC failed to "resolve" her claim, Compl. ¶¶ 11, 38, 73, 98, but FIRREA does not

10

require a "resolution," but explicitly allows the FDIC to "determine" claims by "allowing" or "disallowing" them—which it did here. 12 U.S.C. § 1821(d)(3)(A) ("The Corporation may, as receiver, determine claims in accordance with the requirements" of the statute); § 1821(d)(5)(A)(i) ("Procedures for determining claims. . . . [T]he Corporation shall determine whether to allow or disallow the claim. . . .").

Trice also contends the FDIC's disallowance notice was deficient because it did not provide any reasons for the denial as required by 12 U.S.C. § 1821(d)(5)(A)(iv).[12] This argument fails because the FDIC did provide a reason for denying the claim: it had "not been proven to the satisfaction of the Receiver. 12 U.S.C. § 1821(d)(5)(D)." Compl. Ex. 1-1 at ECF pp. 57–58.

The crux of Trice's administrative claim was her disagreement with Chase's conversion of her mortgage payment to include escrow amounts and the bank's subsequent foreclosure on the property; indeed, she asks this court to declare her loan "void" as a result of Chase's alleged misconduct. *See* Compl. pp. 36–37. Chase is an ongoing concern, not a failed institution like WaMu. Because the FDIC's role under FIRREA is to "to act as receiver or conservator of a failed institution for the protection of depositors and creditors," *Westberg v. FDIC*, 926 F. Supp. 2d 61, 66 (D.D.C. 2013), *aff'd*, 741 F.3d 1301 (D.C. Cir. 2014) (citation omitted), the agency had no authority to grant Plaintiff any relief against Chase. Accordingly, the FDIC's stated explanation for denying her claim was sufficient. Finally, even if the FDIC failed to sufficiently explain its reasons for disallowing her claim, Trice has offered no legal authority that such a

---

[12] 12 U.S.C. § 1821(d)(5)(A)(iv) provides: "Contents of notice of disallowance. If any claim filed under clause (i) is disallowed, the notice to the claimant shall contain-- (I) a statement of each reason for the disallowance; and (II) the procedures available for obtaining agency review of the determination to disallow the claim or judicial determination of the claim."

failure entitles her to the relief she seeks, which includes compensatory and punitive damages, as well as a "voiding" of her loan. *See* Compl. ¶ 2, pp. 36–37. [13]

## B. 42 U.S.C. § 1986

Trice alleges that the FDIC violated 42 U.S.C. § 1986 by failing to prevent a conspiracy involving Chase and others to interfere with her rights. Compl. ¶¶ 88, 94–103 ("Chase and its associates engaged in racketeering, ultimately resulting in the taking of the Plaintiff's home and personal property."). This claim fails because "by [its] terms," Section 1986 claims "do not apply to actions against the United States." *Zhu v. Gonzales*, No. CIV. A. 04-1408(RMC), 2006 WL 1274767, at *5 (D.D.C. May 8, 2006) (citing *Hohri v. United States,* 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), *vacated on other grounds,* 482 U.S. 64 (1987)); *Wickerham v. United States*, No. CV-S-99-1702-KJD LRL, 2001 WL 471867, at *2 (D. Nev. Mar. 22, 2001) ("Section 1985 prohibits conspiracy, on the part of state actors, to deprive persons of equal protection under the law.").

## C. RESPA

Trice contends the FDIC violated RESPA by failing to notify her when WaMu's rights were transferred to Chase. *See* Compl. ¶ 36. Trice cites to 12 U.S.C. § 2605(b)(2)(B)(iii),[14] which provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other

---

[13] Without citation to a provision in the statute, Trice also alleges that the FDIC violated FIRREA by failing to give her notice by 5:00 pm on the day following the receivership. *See* Compl. ¶ 35. The court notes that the FDIC has an obligation to give such notice to persons who are parties to "qualified financial contracts," which the statute defines as "any securities contract, commodity contract, forward contract, repurchase agreement, swap agreement, and any similar agreement that the Corporation determines by regulation, resolution, or order to be a qualified financial contract for purposes of this paragraph." 12 U.S.C. § 1821(d)(8)(D)(i). There is no indication that a mortgage loan meets this definition.

[14] *See* Fn. 7, *infra*.

person" no less than "15 days before the effective date of the transfer." 12 U.S.C. §§ 2605(b)(1), 2605(b)(2)(A).

RESPA defines a "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)," and explicitly excludes the FDIC from the definition of a "servicer." 12 U.S.C. § 2605(i)(2); *see Ibarra v. Plaza Home Mortg.*, No. 08-CV-01707-H (JMA), 2009 WL 2901637, at *4 (S.D. Cal. Sept. 4, 2009)). Accordingly, the court will dismiss Trice's RESPA claim.

**D. APA, FRAUD, and FTCA CLAIMS**

In her reply to the FDIC's motion to dismiss, Trice asserts for the first time that she is bringing claims pursuant to the Administrative Procedure Act ("APA") and Federal Tort Claims Act ("FTCA"). As an initial matter, Trice's post-hoc attempt to amend her Complaint by adding these claims via her responsive brief is impermissible. *See Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010) ("[P]laintiff failed to include these allegations in her complaint, and plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss."), *aff'd*, 424 Fed. App'x 10 (D.C. Cir. 2011). But even if Trice had brought these claims in her Complaint, they would not survive a motion to dismiss.

1. APA

The APA requires that courts "set aside agency action" that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U.S.C. § 706(2)(A). Generally, an agency action shall be set aside if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1313 (D.C. Cir. 2014) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983)).

Even viewing the facts in the light most favorable to Trice, the court finds that she cannot establish an APA claim. Trice has pleaded no facts to indicate that the FDIC acted in an "arbitrary and capricious" manner, abused its discretion, or otherwise acted contrary to law when it rejected her claim involving a dispute with Chase—an entity over which the FDIC had no authority.

    2. Fraud and FTCA Claims

Trice alleges that the FDIC engaged in "fraudulent concealment/and/or Negligent concealment fraud by silence," when it failed to meet its purported obligations under RESPA to notify her that Chase had acquired WaMu's legal interests in her mortgage. Compl. ¶¶ 80–93. Given the court's finding that Trice cannot sustain a RESPA claim, Trice's fraud/negligent concealment claim necessarily fails.

Moreover, Trice may not sue the United States "without its consent," and "the existence of consent is a prerequisite for jurisdiction." *Budik v. Ashley*, 36 F. Supp. 3d 132, 140 (D.D.C. 2014), *aff'd sub nom. Budik v. United States*, No. 14-5102, 2014 WL 6725743 (D.C. Cir. Nov. 12, 2014) (citing *United States v. Mitchell,* 463 U.S. 206, 212 (1983)). Although, "the FTCA is a waiver of the United States' sovereign immunity" against suit, "there are instances in which the United States retains its immunity." *Budik*, 36 F. Supp. 3d at 140 (citing *Marcus v. Geithner,* 813 F. Supp. 2d 11, 16 (D.D.C. 2011)). For example, "any claim arising out of . . . libel, slander, misrepresentation, [or] deceit" is not actionable under the FTCA. *Budik*, 36 F. Supp. 3d at 140 (citing 28 U.S.C. § 2680(h)) (alterations in original); *see also United States v. Neustadt*, 366 U.S. 696, 702 (1961); *Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 947–48 (D.C. Cir. 1975).

Accordingly, Trice's FTCA claim is barred because such a claim is premised on allegations of "deceit." *See Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 126–27 (D.D.C. 2016) (citing *United States v. Neustadt*, 366 U.S. 696, 702 (1961) (holding that the word "deceit" includes fraudulent and negligent misrepresentation)).[15]

### IV. CONCLUSION

For the foregoing reasons, the court will grant the FDIC's motion to dismiss Trice's Complaint.

Date: April 22, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[15] For the same reasons, Trice's deceptive trade practices claim, Compl. ¶¶ 66–79, and her "fraudulent misrepresentation including [sic] concerning title and/or fraudulent conversion," Compl. ¶¶ 60–65, claims fail. The latter claim also fails because her allegations are not directed at the FDIC, but at the entity Chase authorized to pursue the foreclosure and the person who purchased the property at the foreclosure sale. *See e.g.,* Compl. ¶¶ 71, 77.